UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHADWICK WILLACY,

    Plaintiff,

v.                                          Case No. 04-cv-1666-Orl-18DAB

COUNTY OF BREVARD, et al.,

    Defendants.

_____

## ORDER GRANTING SUMMARY JUDGMENT

This case is before the Court on the motion for summary judgment filed by Defendants Philip Williams, Lisa Patrick, Belten Ferguson, Alan Rainey, and Charles E. Banks III (Doc. No. 83). In accordance with *Griffith v. Wainwright*, 772 F.2d 822 (11th Cir. 1985), Plaintiff was notified by Order (Doc. No. 84) of his right to respond to Defendants' motion for summary judgment and to file affidavits and other documents in opposition to the motion. Plaintiff was also informed that the failure to oppose the motion could result in judgment for the movants without further proceedings. *Milburn v. United States*, 734 F.2d 762 (11th Cir. 1984). Plaintiff filed a memorandum in opposition to the summary judgment motion (Doc. No. 88).

### *I. Factual Background*

Plaintiff, a prisoner in the State of Florida, filed an amended civil rights complaint (Doc. No. 37) against Brevard County, Sheriff Philip Williams, Lt. Patrick, Corporal Ferguson, John Doe (Jail Commander), Sgt. Rainey, and C.O. Banks, individually and in

their official capacities alleging that his Eighth and Fourteenth Amendment rights were violated and raising several state law claims. According to Plaintiff, he was convicted of a felony in December of 1991 and remanded to the custody of the Florida Department of Corrections ("FDOC"). (Doc. No. 37 at 8(a).) On May 9, 2004, he was transported from the FDOC to the Brevard County Jail ("BCJ") for a court hearing regarding the validity of his conviction. *Id.* Upon arrival at the BCJ, he was placed in a cell in the general population, which he avers violated both statutory mandate and county policy. *Id.* at 8(a) & 9(a).

Shortly after his placement in the cell, Plaintiff received "numerous verbal threats from an unidentified inmate located within the cellblock." *Id.* at 9(a). Plaintiff alleges that the threats were motivated by the nature of his conviction[1] and that he neither knew the individual making the threats nor had he had any previous altercation with any prisoner housed in the area. *Id.* Due to the threats, Plaintiff verbally requested an immediate transfer to a more secure housing assignment.[2] The responding officer advised Plaintiff to make a written request on the standard grievance form. *Id.* Plaintiff alleges that he completed a grievance form and hand-delivered it to "the cell-block officer." *Id.* at 9(b). According to Plaintiff, he never received a response to the grievance and he continued to receive verbal threats, "always within hearing distance of the officer supposedly supervising the cellblock." *Id.*

---

[1] The record reflects that Plaintiff was convicted of first-degree murder and was under a sentence of death.

[2] Plaintiff does not identify the officer to whom he made the request.

2

In the early morning hours of May 15, 2004, Plaintiff was awakened by the sound of someone trying to open his cell door. Plaintiff jumped from his bed and went to the door, but the person left. Plaintiff was unable to see the person who attempted to gain entry into his cell. However, he contends that the incident was an attempt by an inmate or inmates to physically assault him. *Id.* at 9(b).

Plaintiff further avers that due to his prior incarceration at the BCJ, he was aware that the locking mechanisms on the cell doors could easily be physically forced open from the outside. He also states that this information was "common knowledge among both prisoners and staff." *Id.* at 9(b). According to Plaintiff, Defendants Brevard County and Sheriff Williams were aware of this substantial security deficiency and "consciously elected not to replace these faulty locking mechanisms with secure locks." *Id.* at 9(c). He also contends that Defendants Brevard County and Sheriff Williams were "aware of inmates being subjected to physical assaults by other prisoners made possible only because the assailants gained access to the victim by physically forcing the cell door open." *Id.*

Immediately following the May 15th attempted entry into his cell, Plaintiff wrote a second grievance outlining the earlier verbal threats and the attempted entry into his cell and again requesting a transfer to a more secure housing assignment. *Id.* He hand-delivered the grievance to the cell-block officer, but received no response and was not transferred. *Id.*

3

Plaintiff's post-conviction hearing took place on May 17, 2004. He states that at that time he was told he would be transported back to state prison within the next 72 hours.[3] *Id.* Plaintiff was not returned to FDOC within 72 hours and states that he wrote to County Jail Classification Officer Wilson[4] regarding this failure. According to Plaintiff, no reason for the failure to transport him within the timeframe was provided. *Id.* at 9(c)-9(d).

On May 23, 2004, between 10:00 and 10:30 p.m., Plaintiff was awakened by the sound of his cell door being forced open. *Id.* at 9(d). Before he could react, "numerous dark shapes of persons could be seen entering" his cell. *Id.* The first person threw "a caustic liquid" causing Plaintiff to be blinded. Several persons then held him down and "physically and with extreme brutality and intent to cause great physical injury violently beat upon Plaintiff and repeatedly cut at Plaintiff with razor blades. This violent assault continued for several moments while Plaintiff repeatedly screamed and yelled for the cellblock officers' assistance." *Id.* The assailants suddenly exited his cell. *Id.* When he attempted to reach his open cell door, it was electronically closed by the officer in the control tower. *Id.*

Defendants Ferguson and Rainey, along with several other officers, then came to Plaintiff's cell and escorted him to the administrative confinement area. *Id.* at 9(e). An unidentified nurse gave Plaintiff several band-aids, but no other assistance. Defendant

---

[3]The amended complaint does not specify who told Plaintiff that he would be transported within 72 hours.

[4]The Court notes that Officer Wilson is not a defendant in this action.

4

Patrick, who was the designated shift lieutenant, came to talk to Plaintiff about the assault. *Id.* According to Plaintiff, he attempted to report the assault to Defendants Ferguson and Patrick, but his attempts "were deliberately circumvented by an unwillingness to listen or take action." *Id.* He alleges that he made repeated requests for medical care, but the requests were ignored and he was left alone in a new cell where he remained all night without any medical care. *Id.*

At 6:30 the next morning, Plaintiff was escorted to the booking area and informed that he was being transported back to the state prison. *Id.* Plaintiff alleges that he advised Cpl. Pierce and Sgt. E.J.[5] that he was in need of medical care, but his statements were ignored. *Id.* He was placed in the transport van and returned to Union Correctional Institution ("UCI"). *Id.* at 9(e)-9(f). Upon arrival at UCI, he was taken to the prison infirmary, cleaned up, and given medical care. *Id.* at 9(f). Additionally, the UCI officials took photographs of his injuries. *Id.* Plaintiff states that the injuries included "numerous lacerations caused by being 'cut' with razors, numerous contusions and substantial bruising caused by being physically beaten and kicked, an excruciatingly painful 'burning' sensation causing partial and prolonged blindness as a result of having caustic material thrown into the eyes, and continued emotional and psychological trauma resulting from the above assault." *Id.* Plaintiff seeks compensatory damages of $100,000.00 and punitive damages of $100,000.00 from each named defendant.

---

[5] The Court notes that neither Cpl. Pierce nor Sgt. E.J. is named as a defendant in this action.

In support of the summary judgment motion, Defendants filed seven affidavits and the transcript of Plaintiff's deposition. The substance of the affidavits is as follows:

**Charles E. Banks III**: The night of May 23, 2004, he was working the pod where Plaintiff was housed. He took a break prior to "unlock time." Before leaving for his break, he checked and a light indicated that Plaintiff's cell was secure. During his break, the relieving officer conducted the unlocking of the cells. Upon his return from break, the light indicated that Plaintiff's cell was secure. Approximately twenty minutes after the security check, an unidentified inmate indicated that Plaintiff had been attacked. He checked the panel and saw that Plaintiff's cell was no longer secure. He immediately secured the cell and lockdown was announced in the cellblock. Roving officers then took Plaintiff to be checked by a nurse. He never received or heard a threat by an inmate directed toward Plaintiff.

**Mark Birmingham**: On May 24, 2004, he took custody of Plaintiff for transport back to UCI. He recalls Plaintiff making some statements about being jumped by other prisoners, but Plaintiff did not indicate that he was in pain or injured. He did not notice any evidence of injury to Plaintiff and if he had, he would have requested clearance from the medical staff before transporting Plaintiff.

**Michael Brickner**: A Jail Complex Accreditation Manager with the Brevard County Sheriff's Office, he performed a search of all grievances filed by Plaintiff when he was at the BCJ from May 9, 2004, until May 24, 2004. During that time period, Plaintiff filed three grievances, none of which indicated that other inmates were threatening him, that another inmate had attempted to enter his cell, or that he wanted to be transferred to another cellblock.

**Corporal Belten Ferguson**: He never received or heard any threat by another inmate directed toward Plaintiff. He never personally discovered a malfunctioning cell door lock, unless the inmate himself altered the lock. On May 23, 2004, he was the officer in charge. Between 10:00 p.m and 11:00 p.m., Officer Banks told him that Plaintiff claimed to have been jumped by other inmates. He placed the pod in lockdown and conducted a cell-to-cell search, checking every inmate for bruises or scratches. He accompanied the nurse while she checked Plaintiff for injuries. He observed a small scratch above one of Plaintiff's eyes. Plaintiff could not identify anyone who had attacked him.

**Lieutenant Lisa Patrick:** She never received or heard any threat by another inmate directed toward Plaintiff. She also never gave a grievance form to Plaintiff. She was the shift commander on May 23, 2004, and was not personally involved in the distribution of razors. After the incident, she arrived to find Plaintiff sitting in a chair, Corporal Ferguson standing beside him, and a nurse checking Plaintiff. She saw scratches on Plaintiff's arm and abdomen and minimal bleeding. Plaintiff was given two band-aids. Plaintiff indicated that he wanted to press charges, but claimed he did not know the names of the individuals involved. Corporal Ferguson indicated that he had performed a check on other inmates to find injuries consistent with a fight, but found none. She interviewed the inmate who reported the fight, but he did not see the inmates that entered Plaintiff's cell. Plaintiff was transferred to another cellblock for his safety, and she was directed to submit a work order to check Plaintiff's old cell.

**Sergeant Alan Rainey:** He recalls an incident when Plaintiff alleged he was assaulted, but does not remember the date or time. A nurse attempted to treat Plaintiff for his injuries, but he refused because he wanted a doctor rather than a nurse. The nurse told Plaintiff he would be placed on the list to be seen by the doctor in the morning. The only injuries he recalls seeing were several small scratches on Plaintiff's chest and maybe some on his neck.

**Donna Smith:** She is a licensed practical nurse who performed a physical examination of Plaintiff on May 23, 2004, at 10:30 p.m. after he alleged he was assaulted by another inmate while sleeping. She observed a few small scratches on his arm and abdomen, minor scratches above his left eye and on his chest, and a slight amount of bleeding. She cleaned the areas with Neosporin and bandages were applied. She observed no other injuries.

(Doc. No. 83, Attachments 2, 3, 4, 5, 6, 7, and 8.)

Defendants also filed a copy of the transcript from Plaintiff's deposition. (Doc. No. 83, Attachments 11-14.) Plaintiff testified that shortly after he arrived at the BCJ he received threats from other inmates. (Chadwick Willacy's Deposition Tr. at 13-14.) He complained to an officer whose name he could not remember and was told that he would have to request a cell change in writing. *Id.* at 18-19. The officer provided Plaintiff with a grievance form, which Plaintiff then completed and an officer "picked it up during the

7

count." *Id.* at 20-21. According to Plaintiff, he never got a response to the grievance. *Id.* at 23. Around May 19th, approximately one week after filing the grievance, Plaintiff asked several officers, including Defendant Ferguson about the status of the grievance. *Id.* at 23-24. According to Plaintiff, Defendant Ferguson's response was the "standard, I'll see what I can do; you have to wait for it to go the full, I think it was, ten days for a response. It was pretty much, you know, basic response, but nothing concrete." *Id.* at 24-25.

After the May 15th attempted entry into his cell, Plaintiff did not summon a guard, because he could not see anyone and did not "think that it was anything serious." *Id.* at 29 & 33. He also admitted that he did not see anyone trying to get into his cell and that it was possible that someone could have accidentally bumped into his cell door. *Id.* at 31 & 33. However, Plaintiff testified that on May 15th or 16th he did submit another request to be moved which included information about the tampering with his door and the continued verbal threats. *Id.* at 34. He did not recall to whom he gave the request, and he did not ever receive a response. *Id.* at 35-38.

On the May 17th, Plaintiff was transferred to the Brevard County Courthouse for his hearing, which lasted all day. *Id.* at 38-39. Plaintiff was represented by counsel at the hearing, but did not say anything to either the judge or his attorney about his situation at the BCJ. *Id.* at 40. He did, however, tell his family that he was "having some problems . . . in the jail." *Id.* at 42.

Prior to the May 23rd incident, Plaintiff had not received any verbal threats to his person for at least a couple of days. *Id.* at 49. That night, he was awakened by the sound

8

of his cell door being opened. *Id.* at 54. Some figures entered the cell and a liquid was thrown in his eyes causing a burning sensation. *Id.* at 56. He was then slashed on his arm and hit and punched. *Id.* at 60. The entire incident lasted twenty to thirty seconds. *Id.* at 60-61. Plaintiff testified that the injuries he sustained were cuts, lacerations, bruising and some swelling. *Id.* at 63. He later elaborated: "A lot of cuts, my neck felt messed up. My ribs felt messed up. And just a lot of cuts on me, a lot of cuts." *Id.* at 67. He was bruised on his ribs and neck. *Id.* at 84. In addition, his "eyes were watering and it was hard to keep [his] eyes open and look constantly." *Id.* at 71. Although his eyes were irritated, he could still see. *Id.*

After the incident, a nurse gave Plaintiff two band-aids while he was being transported to a new cell. *Id.* at 72. Plaintiff testified that he told Defendants Patrick and Ferguson that he wanted to see a doctor, but that his requests were disregarded. *Id.* at 73 & 76.

The next morning, Plaintiff was taken out of his cell to booking and then he was turned over to the custody of the transfer officers for return to UCI. *Id.* at 83. Upon his arrival at UCI, Plaintiff was taken to the infirmary where he saw a nurse and a doctor. *Id.* at 91 & 93. The medical personnel "applied some kind of liquid and cleansed [his cut]. Felt around [his] body for the sores and things like that and gave [him] a tetanus shot. And told [him] if there was anything else to put in a sick call." *Id.* at 93. In addition, they took

pictures of the lacerations and bruises on his arms, chest, eyes, sides, and head. *Id.* at 94.[6]

After returning to UCI, Plaintiff did not have any other medical issues regarding the incident, but he has experienced psychological issues which caused him to seek treatment. *Id.* at 95-97. He was diagnosed with post-traumatic stress syndrome and has been prescribed various medications by a psychiatrist at UCI. *Id.* at 96-99.

In response to Defendants' Motion for Summary Judgment, Plaintiff filed various documents supporting his contention that Defendants failed to provide a safe environment. A summary of the documents follows:

1. A July 14, 2004, Memorandum from Lt. Toni Merrit to Commander Greg Futch indicates that Plaintiff was housed in a cellblock where inmates were "known to manipulate their doors so that they show secured, however, they are able to open them at will. In the past, Inmate Willacy has been one of those inmates who has compromised the security of the door . . . . (Please note that work has been performed on the doors at various times in the past to try to prevent this from occurring.)"

2. Defendant Banks's Response to Plaintiff's First Set of Interrogatories, Answer to Question 11, states: "I have heard that cell doors can be opened by inmates through some means, but I have not personally witnessed this action."

3. Defendant Ferguson's Response to Plaintiff's First Set of Interrogatories, Answer to Question 11, states: "The only way the locks malfunction is if an inmate tampers or alters the locking device, which all the inmates know how to cause the locks to malfunction. Inmates normally bend the metal portion of the lock or jam a spoon or any object into the lock to cause the door not to properly close. When we inspect the door and identify the inmate he is placed in lockdown."

---

[6] Plaintiff submitted copies of three of the photographs with his response to the summary judgment motion. *See* Doc. No. 88, Exhibit H.

4. Fifteen incident reports filed between June, 2000, and September, 2003, regarding inmates improperly opening cell doors. Of the fifteen incident reports, five involve attacks on other inmates: June 27, 2000; June 13, 2001; June 11, 2002; June 16, 2002; and September 17, 2002.

(Doc. No. 88, Exhibits A, B, C, and F.)

## *II. Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if it appears that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing that there is no genuine issue of material fact lies on the moving party, and it is a stringent one. *Celotex Corp. v. Catrett* 477 U.S. 317, 323 (1986). Rule 56(e) further provides as follows:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth facts showing there is a genuine issue of fact for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Essentially, the nonmoving party, so long as that party has had an ample opportunity to conduct discovery, must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If, after the movant makes its showing, the nonmoving party brings forth evidence in support of its position on an issue for which it bears the burden

11

of proof at trial that "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (citations omitted).

### III. The Law

A. *Failure to Prevent Harm*

In this case, Plaintiff alleges that the incident happened after he was sentenced. Therefore, his allegations are governed by the Eighth Amendment's prohibition against cruel and unusual punishment, rather than the Fourteenth Amendment's Due Process Clause.[7] In order to show Eighth Amendment liability for failure to prevent harm, a prisoner must establish that prison officials acted with deliberate indifference to a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Accordingly, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* 833.

"It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. According to the Eleventh Circuit Court of Appeals,

> [a]n Eighth Amendment violation will occur when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk. A plaintiff must also show that the constitutional violation caused his injuries.

---

[7]Claims regarding conditions of confinement made by pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

12

*Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001); *see also Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003) (recognizing the same standard for pretrial detainee claims made under the Fourteenth Amendment). Thus, in order to prevail on his Eighth Amendment claim, Plaintiff must establish three elements: (1) that Defendants were subjectively aware of a substantial risk of serious harm; (2) that Defendants did not respond reasonably to such risk; and (3) that the constitutional violation caused his injuries. Mere negligence alone is not sufficient to support an Eighth Amendment violation and, therefore, is not actionable under § 1983. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.) ("Merely negligent failure to protect an inmate from attack does not justify liability under section 1983."), *cert. denied*, 496 U.S. 928 (1990); *see also Davidson v. Cannon*, 474 U.S. 344, 347 (1986) (where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required").

In the instant case, Plaintiff contends that all Defendants were deliberately indifferent to his safety while a prisoner at the BCJ. However, Plaintiff's allegations fall short of satisfying the three elements required to establish a constitutional violation. First, Plaintiff has not demonstrated that either the distribution of disposable razor blades or the malfunctioning cell lock presented a substantial risk of serious harm to him. The records submitted by Plaintiff indicate that inmates, including Plaintiff, were known to manipulate the locking mechanisms, but fall short of establishing a substantial risk of serious harm to Plaintiff. In fact, of the fifteen incident reports provided by Plaintiff, only five involve attacks or fights and only one involved an incident serious enough to merit emergency

medical attention. Moreover, the incident closest in time to Plaintiff's attack occurred over a year and a half earlier. Finally, Plaintiff own deposition testimony establishes that the attack lasted less than one minute and BCJ staff immediately responded.

In addition, Plaintiff has failed to sufficiently demonstrate a subjective awareness of any risk by Defendants. A subjective awareness requires a showing that Defendants were aware of a "particularized threat or fear felt by [the plaintiff]." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003). Defendants "must [have been] aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists-and . . . must also [have drawn] that inference." *Id.* at 1349 (quotation omitted).

In his deposition, Plaintiff testified that he asked Defendant Ferguson about the status of his grievance and basically got a standard response to wait the full ten days for a response. Plaintiff has not provided a copy of any grievance he filed regarding the threats he alleges were made against him or a request for a cell transfer. Nor can he identify any person, much less any named Defendant, to whom he actually delivered a written grievance, complaint, or request for transfer. Defendants, on the other hand, have provided affidavits indicating that they did not hear and were not aware of any threats against Plaintiff. Furthermore, they have also provided evidence that none of the three grievances filed by Plaintiff during the applicable time period referred to inmate threats or contained a request for a cell transfer. The record does not support the contention that Defendants had any subjective awareness of a substantial risk of serious harm to Plaintiff.

Finally, Plaintiff's amended complaint also fails to satisfy the causation element of the Eighth Amendment analysis. Plaintiff has flatly failed to point to any action or inaction by Defendants that led to his assault. In fact, his testimony and the record evidence the officers' diligent watch over Plaintiff's cellblock as well as their swift response to his assault. By Plaintiff's own testimony, the assault lasted less than one minute and the officers responded immediately. Plaintiff's allegations do not rise to the level of establishing a nexus between Defendants' actions and Plaintiff's assault.

Since Plaintiff has failed to demonstrate a substantial risk of serious harm, subjective awareness of such a risk by Defendants, and a nexus between the risk and Plaintiff's injuries, his amended complaint does not demonstrate a constitutional violation. *See Walker v. State of Tennessee*, No. 98-6586, 2000 WL 32057, at **1-**2 (6th Cir. January 7, 2000) (prisoner who was assaulted brought suit alleging Eighth Amendment violation based on the fact that his cell door was malfunctioning and did not lock properly; district court granted defendants' motion to dismiss, finding that the plaintiff's earlier grievances may have provided notice that his cell door was malfunctioning, but did not provide notice that he faced a specific risk of assault). Defendants' motion for summary judgment must be granted.[8]

---

[8]This analysis also precludes Plaintiff's official capacity claims. Governmental entities are only liable when the alleged constitutional violations resulted from the execution of the policy or custom of the governmental entity. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Since Plaintiff's amended complaint fails to set forth a constitutional violation, the governmental entity has no liability.

15

B.  *Medical Care*

The Supreme Court set forth the standard for prison medical care in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976): "deliberate indifference to [the] serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." However, it is clear that not every complaint by a prisoner regarding medical care rises to the level of a constitutional violation. *Id.* at 106. The inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" *Id.* at 105-06.

As recognized by the Eleventh Circuit Court of Appeals, to demonstrate deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). "First, a plaintiff must set forth evidence of an objectively serious medical need. Second, a plaintiff must prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.* (citations omitted).

The Eleventh Circuit has described a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citation omitted). In either situation, "the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Id.* (quotation marks and citation omitted).

16

In the instant case, Plaintiff states that he received "numerous lacerations caused by being 'cut' with razors, numerous contusions and substantial bruising caused by being physically beaten and kicked, an excruciatingly painful 'burning' sensation causing partial and prolonged blindness as a result of having caustic material thrown into the eyes, and continued emotional and psychological trauma resulting from the above assault." (Doc. No. 37 at 9(f).) By his own admissions, the only medical treatment he received for his physical injuries involved a cleansing of his wounds and a tetanus shot. Despite being advised to apply for sick call if he had any further problems, there is no indication that he sought any further assistance for his physical injuries. These injuries simply fail to rise to the level of a serious medical injury for Eighth Amendment purposes. *See Brock v. Sparkman*, 101 Fed. Appx. 430, 431 (5th Cir. 2004) (stating that prisoner who had bumps and bruises from hitting his head on the top bunk and never required any medical attention did not show any cognizable injury); *see also Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990) (state prisoner's swollen, bleeding wrists from handcuffs that were too tight "do not constitute such a 'serious medical need' that any minor delay caused by [prison officials] in delivering [inmate] to the care of medical personnel could be construed as 'deliberate indifference'"); *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir.1988) (while sliver of glass in detainee's palm "was no doubt uncomfortable," it nevertheless "was not a serious injury" and fourteen-hour delay in medical treatment "did not violate his constitutional rights" because cuts and bruises were "minor" and "did not require either stitches or painkiller").

Assuming, however, that Plaintiff's post-traumatic stress syndrome constituted a serious medical condition, the next step requires a consideration of the subjective component, whether Defendants were deliberately indifferent to that serious medical need. To establish the requisite deliberate indifference, "the prisoner must prove three facts: (1) subjective knowledge of a risk of a serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). Plaintiff has not alleged or shown that Defendants had any knowledge of his post-traumatic stress syndrome. In fact, there is no indication in the record that during the less than twelve hours he spent at the BCJ after the assault (which the records indicate was the precipitating point for the syndrome), Plaintiff informed anyone that he was suffering from this disorder. Moreover, the records also indicate that he has received ongoing treatment at UCI.

C.   *Defendants Brevard County and John Doe Jail Commander*

The Court notes that Plaintiff has also named Brevard County and John Doe Jail Commander as Defendants in this action. The allegations against Brevard County mirror those against Defendant Williams in his official capacity. *See* Doc. No. 37 at 9(c) & 9(f)-(g). The allegations against the Jail Commander follow the allegations against Defendants Patrick, Ferguson, Rainey, and Banks. *Id.* at 9(g) & 9(h).

As set forth in the discussion above, the facts and record evidence demonstrate that Plaintiff's constitutional rights have not been violated. The analysis of the claims as outlined above applies equally to the claims against Defendants Brevard County and Jail

Commander. Therefore, this Court finds that it is appropriate to grant summary judgment as to all Defendants.

D.  *State Law Claims*

With regard to the state law claims, the Court notes that "state claims should ordinarily be dismissed if all federal claims are eliminated before trial." *Edwards v. Okaloosa County*, 5 F.3d 1431 (11th Cir. 1993). In the present case, it does not appear that the applicable state statute of limitations has run; therefore, the Court declines to exercise pendent jurisdiction over these claims, and the state law claims are dismissed without prejudice to the refiling of these claims in state court.

*IV. Conclusion*

The Court finds that Defendants are is entitled to summary judgment as a matter of law on Plaintiff's claims. Accordingly, it is

**ORDERED AND ADJUDGED:**

1. The motion for summary judgment filed by Defendants Philip Williams, Lisa Patrick, Belten Ferguson, Alan Rainey, and Charles E. Banks III (Doc. No. 83) is **GRANTED**, and they are entitled to summary judgment as a matter of law.

2. The Clerk of the Court is directed to enter a judgment in favor of all Defendants and against Plaintiff and to close this case.

**DONE AND ORDERED** at Orlando, Florida, 30 day of March, 2007.

_____
G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

19

Copies to:
sa 6/25
Chadwick Willacy
Counsel of Record